# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARY JO CHUDLEY**, | : |
| *Plaintiff* | : Case No. 19-cv-03879-JMY |
| v. | : |
| **CYNTHIA MATOSSIAN, ET AL.**, | : |
| *Defendants* | : |

# MEMORANDUM

**YOUNGE, J.**                                                        **NOVEMBER 21, 2019**

      Before the Court is Plaintiff Mary Jo Chudley's ("Plaintiff") Motion for Default Judgment ("Motion," ECF No. 5) against Defendants Cynthia Matossian, MD, PA and Matossian Eye Associates (collectively, "Defendants"). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons that follow, Plaintiff's Motion will be denied without prejudice.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

      On August 26, 2019, Plaintiff filed her Complaint against Defendants, seeking to recover damages under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1981a; the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.* ("Compl.," ECF No. 1.) In her Complaint, Plaintiff alleges she was an employee of Matossian Eye Associates, and that she began work as an Ophthalmic Associate on January 10, 2016. (*Id*. ¶ 7.) When Plaintiff "started [working for Matossian Eye Associates] she told Cynthia Matossian that

she had a bad right knee and degenerative disc disease." (*Id*. ¶ 8.) Plaintiff also suffered from obesity. (*Id*. ¶ 10.)

"In or about June 2017[, Plaintiff] requested the opportunity to scribe." (*Id*. ¶ 12.) "Cynthia Matossian initially told [Plaintiff] that she didn't think [Plaintiff] would be able to scribe due to her weight and knee." (*Id*. ¶ 13.) "Nevertheless, at [Plaintiff's] insistence she was given the opportunity to scribe and then assigned to the most demanding doctor." (*Id*. ¶ 14.)

Plaintiff told the office manager, Jodi Nini, "that she was getting shots in her right knee every three months" and "also discussed her plan to have a gastric bypass [surgery.]" (*Id*. ¶¶ 15-17.) Bypass surgery was scheduled for February 14, 2018, and "Nini initially told [Plaintiff] that she could not have off for the surgery and it wasn't until two weeks prior to the surgery that [Plaintiff] found out her request for time off for the surgery was approved." (*Id*. ¶¶ 22-23.) After the surgery, Plaintiff kept in touch with Nini. (*Id*. ¶ 24.)

"On April 12, 2018[, Plaintiff] received an email from Nini informing her, for the first time, that she would need a note indicating that she was able to return to work without any restrictions, before she would be allowed to return to work." (*Id*. ¶ 25.) Plaintiff responded to the email asking for clarification. (*Id*. ¶ 26.) In response, Plaintiff "received an email from Nini on May 18, 2018 alleging that [Plaintiff] did not respond to Nini's April 12, 2018 and May 1, 2018 emails and that Defendants were treating it as a voluntary resignation." (*Id*. ¶ 27.) Plaintiff then responded to Nini asserting that she did in fact respond to the April 12, 2018 email, and did not see the May 1, 2018 email. (*Id*. ¶ 28.)

"On May 21, 2018[, Plaintiff] received [medical] clearance to return to work" and Plaintiff "immediately informed Nini." (*Id*. ¶¶ 29-30.) On May 28, 2018, Nini responded to Plaintiff, "stating that Defendants no longer have a position for her." (*Id*. ¶ 31.) Plaintiff,

2

however, alleges that "there were open position[s] for which [Plaintiff] was qualified." (*Id*. ¶ 32.)

Plaintiff maintains in her Complaint that the conduct of Defendants, including their refusal to allow Plaintiff to return to work with or without restrictions, their refusal to allow Plaintiff to return to work after medical leave, and their informing Plaintiff that there were no open positions for her when open positions existed, constitutes unlawful discrimination in violation of the ADA, PHRA, and FMLA. (*Id*. ¶¶ 40, 45, 51.) Plaintiff exhausted her administrative remedies, and the EEOC issued a probable cause determination on or about April 17, 2019. (*Id*. ¶¶ 34-35.)

On September 10, 2019, Defendants were both personally served at 501 Hyde Park, Doylestown, Pennsylvania (ECF No. 2 at 1, 4), Defendants' principal place of business (Compl. ¶¶ 2-3). Thereafter, neither Defendant filed an Answer to the Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("A defendant must serve an answer [] within 21 days after being served with the summons and complaint[.]"). On October 2, 2019, Plaintiff filed a Request for Entry of Default, asking the Clerk of Court to enter default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 4.) The Clerk entered default on October 2, 2019. On October 16, 2019, Plaintiff filed the instant Motion for Default Judgment. The Court notes that no opposition has been filed, and that the time within which to file an opposition has expired. *See* L.R. 7.1(c) ([A]ny party opposing the motion shall serve a brief in opposition . . . within fourteen (14) days after service of the motion[.]").

## II.  LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

3

is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Upon the party's request, the clerk of court may then enter default judgment, but only if the claim is for a sum certain or one that can be made certain by computation, the defendant has made no appearance, and the defendant is not a minor or incompetent. *Id*. at 55(b)(1). In all other cases, the party seeking a default judgment must make an application to the court. *Id*. at 55(b)(2).

Although the entry of default judgment is "left primarily to the discretion of the district court," this discretion is not limitless given that cases should "be disposed of on the merits whenever practicable." *Hritz v. Woma Corp*., 732 F.2d 1178, 1180-81 (3d Cir. 1984); *see also Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003) ("Our Court does not favor entry of defaults or default judgments . . . as it prefers adjudication on the merits."). "Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F. 2d 1142, 1149 (3d Cir. 1990)). "The court's initial inquiry is 'whether the unchallenged facts constitute a legitimate cause of action[.]'" *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688 (3d ed. 2013)); *accord Pope v. United States,* 323 U.S. 1, 12 (1944) ("[U]pon default, . . . the court determines that the unchallenged facts shown of record establish a legally binding obligation; it adjudicates the plaintiff's right of recovery and the extent of it, both of which are essential elements of judgment."); *see also, e.g., Schall v. Ronak Foods*, No. 19-1463, 2019 WL 4034765, at *2 (E.D. Pa. Aug. 27, 2019) (denying default judgment because plaintiff failed to allege facts in complaint to support ADA claim); *Liberty Bell Equipment Corp. v. Coastal Tool*

4

*Supply, LLC*, No. 18-3019, 2018 WL 5885455, at *2-3 (E.D. Pa. Nov. 9, 2018) (denying default judgment because plaintiff failed to allege facts in complaint to support breach of contract claim); *Tri-State Training & Safety Consulting, LLC v. Markawicz*, No. 15-876, 2015 WL 5116754, at *3-4 (E.D. Pa. Aug. 28, 2015) (denying default judgment in part because plaintiff failed to allege facts in complaint to support claims for copyright infringement, tortious interference, and unfair trade practices); *Frenkel v. Baker*, No. 13-5880, 2014 WL 5697449, at *5-7 (E.D. Pa. Nov. 4, 2014) (denying default judgment because plaintiff failed to allege facts in complaint to support claims for conversion and fraud); *Jimenez v. Rosenbaum-Cunningham, Inc.*, No. 7-1066, 2010 WL 1303449, at *4 (E.D. Pa. Mar. 31, 2010) ("Before awarding a default judgment, the [c]ourt must determine whether the moving party's complaint establishes a legitimate cause of action.").

If the court determines that the plaintiff has sufficiently stated a cause of action, it must then assess damages. As noted above, unless damages are "liquidated or computable," they "cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing[,]" *Comdyne I*, 908 F.2d at 1152, or otherwise by such proof as the plaintiff may submit without a hearing. *See* Fed. R. Civ. P. 55(b)(2).[1]

---

[1] In her Motion, Plaintiff "requests that this Court schedule a jury trial to determine the amount of damages to be awarded to [Plaintiff.]" (Motion at 4.) It appears that Plaintiff claims that a statutory right to a jury trial survives default because of the last provision of Rule 55(b)(2), which provides that "[t]he court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). Plaintiff takes this clause to mean that her undisputed right to a jury trial on her disability discrimination claim before the Defendants defaulted also survives the default. Read in context, however, the language reasonably applies to statutes requiring jury trials specifically after default has occurred. The Advisory Committee Note states explicitly that this clause of paragraph (2) preserves 28 U.S.C. § 1874 and other similar statutes. *See* Fed. R. Civ. P. 55(b) advisory committee's notes to 1937 adoption. Section 1874 of Title 28 is unlike Section 1981a(c) of Title 42 in that Section 1874 provides that in certain types of collection actions there is a right to a jury trial even after default. *Compare* 28 U.S.C. § 1874 *with* 42 U.S.C. § 1981a(c). Therefore, in this Court's view, the Advisory Committee Note confirms that the last clause of Rule 55(b)(2) requires a jury trial after default *only* where a statute specifically provides for jury trial after default. Moreover, academic commentators and caselaw support

5

Further, the United State Court of Appeals for the Third Circuit has provided district courts with some factors to guide the exercise of their discretion. The Third Circuit has stated that "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Lastly, prior to the entry of default judgment, a district court must satisfy itself that the court has both subject matter jurisdiction over the action and personal jurisdiction over the defendant against whom the default judgment is sought. *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996) ("In order to impose personal liability upon a defendant or obligate him or her in favor of a plaintiff, a court must be vested with jurisdiction over the parties as well as subject matter jurisdiction.").

### III. DISCUSSION

Based on the above standard, before entering default judgment, this Court must be satisfied that: (1) the Court has subject matter jurisdiction and personal jurisdiction, (2) the Plaintiff's Complaint plausibly states a claim for relief, and (3) the *Chamberlain* factors favor the entry of default judgment.

---

this interpretation of Rule 55(b)(2). *See* Wright & Miller, *supra*, § 2688 (4th ed. 2019) ("Rule 55(b)(2), which empowers the court to conduct whatever hearings are necessary on an application for the entry of a default judgment, provides that the court must preserve any federal statutory right of trial by jury. The only relevant statute is Section 1874 of Title 28 . . . Even in actions not within that statute, however, the court *may* order a jury trial as to damages in a default situation if it seems to be the best means of assessing damages. *But neither side has a right to a jury trial on damages*.") (emphasis added); *see also Teri Woods Publ'g, L.L.C. v. William*, No. 12-4854, 2013 WL 6179182, at *4 (E.D. Pa. Nov. 25, 2013) (citing cases and noting that "[t]hese cases represent the fact that neither the Constitution nor federal statutory law confers the right to a jury trial on damages following the entry of default").

### A. Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because the Complaint raises federal questions under the ADA and FMLA. (*See* Compl. ¶ 4.) The Court has supplemental jurisdiction over the Pennsylvania state law claim pursuant to 28 U.S.C. § 1367(a). (*See id.* ¶ 5.) The Court also has personal jurisdiction over the Defendants because all events giving rise to the claims occurred within Pennsylvania, and Defendants maintain their principal place of business in Doylestown, Pennsylvania. (*See id.* ¶¶ 2-3; *see also BNSF Ry. Co. v. Tyrrell*, __U.S.__, 137 S. Ct. 1549, 1558 (2017) (explaining "specific or case-linked jurisdiction and general or all-purpose jurisdiction").

### B. Whether Plaintiff has stated a cause of action

Since a party in default does not admit conclusions of law, the Court must next determine whether the unchallenged facts set forth in Plaintiff's Complaint establish a cause of action. *See J&J Sports Productions, Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) ("Before granting default judgment, a district court may consider whether, 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'") (quoting *Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008)); *see also* Wright & Miller, *supra*, § 2685 (4th ed. 2019).

#### 1. *Count One—ADA claim*

Plaintiff's first count is based on the ADA. (*See* Compl. ¶¶ 36-43.) In order to state a claim of disability discrimination under the ADA, a plaintiff must allege that she (1) has a disability, (2) is a "qualified individual," and (3) suffered an adverse employment action because of that disability. *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998) (*en banc*).

The employer must also have had knowledge of the disability at the time of the adverse action. *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F. 3d 578, 581 (3d Cir. 1996).

A plaintiff has a disability for purposes of the ADA if she (1) has "a physical or mental impairment that substantially limits one or more major life activities," (2) has a record of such a physical or mental impairment, or (3) is "regarded as" having such an impairment. 42 U.S.C. § 12102(1). Here, the Complaint contains no factual allegations about Plaintiff's obesity, bad right knee, or degenerative disc disease limiting a major life activity, nor does the Complaint indicate that Plaintiff has an established record of such impairments. Instead, Plaintiff alleges, in conclusory fashion, that "Defendants regarded [Plaintiff] as having a disability covered by the ADA." (Compl. ¶ 37.) While Plaintiff does assert that she was told by Defendants that they "didn't think [Plaintiff] would be able to scribe due to her weight and knee[,]" (Compl. ¶ 13), the Court finds that this allegation alone is not sufficient to state a claim for being "regarded as" having an impairment given that Plaintiff was "[nevertheless] . . . given the opportunity to scribe and [was] assigned to the most demanding doctor" (*Id.* ¶ 14). *See* 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

Plaintiff also has not sufficiently alleged that she was a "qualified individual." Under the ADA, a plaintiff is a "qualified individual" if, with or without reasonable accommodation she can "perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Here, Plaintiff alleges no facts regarding her work performance and the quality of her work, nor does Plaintiff allege that her impairments did not interfere with her ability to perform her job. In fact,

it is unclear to the Court what position she held at the time of the adverse employment action, and what positions she would have qualified for at that time. Instead, Plaintiff alleges, again in conclusory fashion, that Plaintiff "was capable of performing the essential functions of her position [and] was capable of performing the essential functions of position(s) that were open when [Plaintiff] was informed there was no open position for her." (Comp. ¶¶ 38-39.)

In summary, Plaintiff's Complaint presents mere conclusory allegations, not well-pleaded facts, to establish that she was "regarded as" having an impairment and was a "qualified individual" under the statute. The Court need not credit such labels and conclusions when evaluating a motion for default judgment. *See Wright & Miller*, *supra*, § 2688.1 (4th ed. 2019) (conclusory allegations and conclusions of law are not entitled to the same presumption and are not deemed admitted).

> 2. *Count Two—PHRA claim*

Plaintiff's second count is based on the PHRA. (*See* Compl. ¶¶ 44-47.) The PHRA claim involves a similar analysis to the ADA claim. *See Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002) ("The PHRA and the ADA are 'basically the same . . . in relevant respects and Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'") (quoting *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002)). As was discussed *supra*, Plaintiff has failed to sufficiently allege a claim for disability discrimination under the ADA, and therefore the Court finds Plaintiff has also failed to state a claim under the PHRA.

> 3. *Count Three—FMLA claim*

Plaintiff also brings an interference claim under the FMLA. (*See* Compl. ¶¶ 48-52.) To state a claim of interference, the employee must allege that she was entitled to a benefit under the

FMLA and was denied that benefit. *See Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014). Among the benefits the FMLA grants to eligible employees is the right "to a total of 12 workweeks of leave during any 12-month period . . . [due to an employee's] own serious health condition[,]" 29 U.S.C. § 2612(a)(1)(D), and the right following leave to be restored by the employer to the position of employment held by the employee when the leave commenced or to an equivalent position, *id*. § 2614(a)(1)(A)-(B). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Phila.*, 430 F.3d 117, 119-20 (3d Cir. 2005).

In order to recover under the FMLA, a plaintiff must allege that she was an "eligible employee." *See* 29 U.S.C. § 2611(2)(A). To qualify as an eligible employee, she must have worked for the employer for at least twelve months and for at least 1,250 hours. *Id*. § 2611(2)(A)(i)-(ii). Moreover, the employer must have employed at least fifty employees. *Id*. § 2611(2)(B)(ii). Here, Plaintiff alleges that she worked for Defendants from on or about January 2016 through February 2018 (*see* Compl. ¶¶ 7, 22), which meets the twelve-month employment requirement. Plaintiff however, fails to establish that she was an "eligible employee" because the Complaint contains no factual allegations as to whether she worked for more than 1,250 hours in the 12-month period prior to requesting leave. *See* 29 U.S.C. § 2611(2)(A). Plaintiff's conclusory allegation that she "was an eligible employee as that term is defined by the FMLA" is insufficient. (*See* Compl. ¶ 49.) Similarly, Plaintiff's allegation that "Defendants were an employer as that term is defined by the FMLA" is also insufficient. (*See id*. ¶ 50.) The Complaint contains no facts as to how many employees Defendants employed. *See* 29 U.S.C. § 2611(2)(B)(ii).

Plaintiff must also plead she was entitled to leave "because of a serious health condition" that made her "unable to perform the functions of the position[.]" *Id*. § 2612(a)(1)(D). The corresponding regulations provide that a "serious health condition entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in [Section] 825.114 or continuing treatment by a healthcare provider as defined in [Section] 825.115." 29 C.F.R. § 825.113(a). Section 825.115, in turn, defines continuing treatment as "[t]reatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider." *Id*. § 825.115(a)(2). Here, although not explicitly stated, Plaintiff alleges facts that plausibly suggest she suffered a serious medical condition. Plaintiff alleges that she underwent gastric bypass surgery and that she experienced "complications that required a heart monitor in February/March 2019 and an endoscopy in April 2018." (Compl. ¶ 24.) Such complications following surgery indicate the need for continuing treatment under the supervision of a health care provider. Lastly, Plaintiff adequately alleges that Defendants terminated her employment (*see id*. ¶¶ 27, 31), thereby denying Plaintiff the benefit of taking FMLA leave and then returning to her position.

Accordingly, because Plaintiff fails to allege facts in her Complaint demonstrating she was entitled to take FMLA leave (*i.e.*, she was an eligible employee under the FMLA and Defendants were eligible employers), the Court finds that she fails to state a claim for FMLA interference at this time.

### C. *Chamberlain* factors

The last step—whether the *Chamberlain* factors favor granting default judgment—is not reached as Plaintiff has failed to sufficiently state a cause of action in her Complaint. *See*

*Chamberlain*, 210 F.3d at 134. Nonetheless, for purposes of thoroughness, the Court will address the *Chamberlain* factors as though Plaintiff has sufficiently stated a cause of action.

As to the first factor, Plaintiff will be prejudiced absent a default judgment because Defendants' failure to respond to Plaintiff's claims leaves Plaintiff with no other means to vindicate her claims. As to the second factor, because Defendants have not filed an answer or motion to dismiss, the Court has no knowledge of any defenses Defendants may have. Moreover, "the [C]ourt may presume that an absent defendant who has failed to answer has no meritorious defense, because it is not the [C]ourt's responsibility to research the law and construct the parties' arguments for them." *Joe Hand Promotions, Inc.*, 3 F. Supp. 3d at 271-72 (internal citations and quotation marks omitted). As to the third factor, for the Court to find that Defendants exhibited culpable conduct, they would have had to have acted "willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F. 2d 120, 123-24 (3d Cir. 1983). District courts have reached different conclusions regarding whether a defendant's failure to appear and defend can, in itself, constitute culpable conduct. *See State Farm Fire & Cas. Co. v. Hunt*, No. 14-6673, 2015 WL 1974772, at *5 (E.D. Pa. May 4, 2015) (discussing different conclusions on this issue). In this regard,

> [s]ome courts have held that the [culpable conduct] factor to be neutral where the court has no information relating to the motivations of the defendant in failing to appear and defend [, and o]ther courts have found that the defendant's failure or refusal to engage in the litigation process and to offer no reason for this failure or refusal may qualify as culpable conduct with respect to the entry of a default judgment-indeed, for the [c]ourt to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative.

*Id*. (internal citations and quotation marks omitted).

The Court previously detailed the Defendants' dilatory conduct in this case—Plaintiff served Defendants with her Complaint on September 10, 2019, they failed to respond by their October 1, 2019 deadline, and they have never appeared since. There is nothing in the record to indicate that the Defendants' delay in acting in this case is due to anything other than deliberate action, which should constitute culpable conduct and weigh in favor of a default judgment. Even if the Defendants' failure to appear and defend is not culpable conduct, this factor would be neutral and, in light of the strength of the other two factors favoring a default judgment, would not prevent this Court from entering a default judgment.

## IV. CONCLUSION

For the reasons stated above, the Court will deny the present Motion without prejudice. Because Defendants have failed to file an answer, Plaintiff may amend her Complaint without leave of court. *See* Fed. R. Civ. P. 15(a)(1)(B). If Defendants again fail to respond, Plaintiff may renew her motion for default judgment. An appropriate order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ Judge John Milton Younge

**Judge John Milton Younge**